## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TAKIA JENKINS**
3440 22d St, SE
Washington, DC 20020

and

**MUSLIMAH TAYLOR**
4011 Lawrence Street
Brentwood, MD 20722

and

**LORENZO JOHNSON**
4001 North 9th Street
Arlington, VA 22203

Plaintiffs, on behalf of themselves and all
others similarly situated,

    v.

**GOVERNMENT OF THE DISTRICT OF
COLUMBIA**,

**SERVE:**

Mayor Muriel Bowser
Designee Darlene Fields
Civil Litigation Division, Ste 600 South
441 4th Street, NW
Washington DC 20001

and

Karl A. Racine, Esq.
D.C. Attorney General
Designee Darlene Fields
Civil Litigation Division, Ste 600 South
441 4th Street, NW
Washington DC 20001

Defendant.

Civil Action No:

## CLASS ACTION COMPLAINT

## Complaint For Judgment For Money Damages And Injunctive Relief And Declaratory Relief With Jury Demand

1.      This is a class action complaint for a judgment for money damages and declaratory judgment and injunctive relief under 42 U.S.C. § 1983 against the Government of the District of Columbia (hereinafter "District of Columbia" or the "District").

2.      The Named Plaintiffs, Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson, are persons whose vehicles were seized by the Metropolitan Police Department ("MPD") for possible use as evidence in a criminal investigation or proceeding (but not civil forfeiture) and then placed in the custody of the MPD Property Clerk who retained the vehicles for months after they were needed by the District for investigation or as possible evidence.

3.      Taking and detaining a vehicle for a forfeiture determination means the vehicle is seized at the direction of the Mayor so that the Property Clerk can make a determination about whether to institute civil forfeiture proceedings against the vehicle even if the Property Clerk ultimately decides that the vehicle is not subject to civil forfeiture[1].

4.      As used herein "for investigation" or an" investigative hold" is when the MPD seizes or takes custody of a vehicle for investigation.

5.      An "evidentiary hold" on a vehicle is when a prosecuting agency, either the US attorney or the Office of the Attorney General of the District of Columbia ("OAG"), holds the vehicle for possible use as evidence in a criminal proceeding such as a hearing or trial.

6.      Sometimes the MPD seize a vehicle for both civil forfeiture and as evidence.

---

[1] The term "forfeiture determinations" is used instead "for forfeiture" because sometimes the MPD determine that property seized for forfeiture is in fact not subject to forfeiture. Property that is not subject to forfeiture must be returned to the owner, according to D.C. Code § 48-905.02(d)(3)(C).

7.      This case deals with vehicles seized solely as possible evidence, not civil forfeiture.

8.      When the District seizes vehicles for use as possible evidence the vehicles themselves are virtually never offered as evidence in criminal proceedings.

9.      Strictly speaking, seizing a vehicle as possible evidence means the District seizes and holds a vehicle because it may have some possible evidentiary value which can be extracted for use in a prosecution by searching it and by using such techniques such as photographing, fingerprinting, or processing the vehicle for fingerprints, DNA, or other such trace evidence.

10.     Except in the most extraordinary cases it takes only a day or two to process a vehicle for evidence using these techniques.

11.     Nonetheless, the District's official policy is that the Property Clerk has discretion under the Property Clerk statute to retain vehicles seized as potential evidence for at least a year after seizure. D.C. Code § 5-119.06(d).

12.     The District has a practice of retaining cars seized for investigation and as possible evidence for months and longer regardless of the prosecutors' need for the vehicles as evidence and without regard for the owners' interest in retrieving their cars and without regard for the owners' interest in preserving the value of their cars.

13.     Sometimes the MPD seize and retain a vehicle ostensibly as possible evidence but in reality as leverage to obtain statements from suspects or to make witnesses testify in criminal proceedings.

**Cars are valuable assets that waste away on the MPD's unprotected impoundment lot**

14.     The importance of a vehicle to an individual's ability to work and to conduct the affairs of life, and the serious harm thus resulting from the undue retention of a vehicle by the government, cannot be overstated. Our society is, for good or ill, highly dependent on the automobile. It is often an individual's most valuable possession, as well as their primary mode of transportation, and

for many, the means to earn a livelihood. The seizure of a person's automobile is threat to the person's livelihood when they can no longer drive to and from work every day.

15.     An additional problem caused by the seizure and retention of vehicles as possible evidence is that cars and trucks are depreciating assets that diminish in value each day they sit idle on the MPD impound lot.

16.     The MPD aggravate the loss in value caused by depreciation by leaving vehicles to waste away on an unprotected lot in the sun, rain, sleet, and snow.

17.     Leaving a car or truck out on an unprotected lot exposed to the elements also destroys much of the vehicle's potential evidentiary value.

18.     The Constitution requires the government's need to hold a vehicle as possible evidence to be weighed against the owner's right to retrieve their vehicle when the government no longer needs it.

19.     But, the District's implementation of its policies results in seizing vehicles on the off chance that the vehicle may have some evidentiary value, and then keeping them for months and years, and the implementation of its policies gives no weight to owners' interest in promptly retrieving their vehicles after the vehicles are no longer needed as evidence.

20.     The District maintains a release system for vehicles seized as potential evidence that delays releases of those vehicles until the District, "in its sweet time, and with the resources it chooses . . . is ready to make" those releases.

21.     The prosecutors and the MPD are virtually never required to demonstrate to a judge, not even in an *ex parte* hearing, the existence of a nexus between the vehicles and criminal behavior.

22.     Nor is the prosecutor practically ever required to demonstrate to a judge, not even in an *ex parte* hearing, why a less drastic measure such as photography or examining the car for prints or other relevant evidence could not preserve the evidentiary value of the vehicles.

23.     Plaintiffs were injured by these seizures and retentions because the District: (1) did not at the time of seizure give notice to owners telling them who had seized their vehicles and for what purpose so the owners did not know which retrieval procedure applied; (2) held their vehicles for long periods of time (or never gave them back) without giving them prompt post seizure hearings at which they could challenge the government's seizure and continued retention of their vehicles; (3) retained their vehicles even after they were no longer needed for investigation or evidence (or failed to give them back) and failed to give required notice and a hearing to owners when the District no longer needed their vehicles so owners could challenge the continued retention of their vehicles; or (4) never returned the property even though it was no longer needed for investigation or evidence.

24.     In the absence of a prompt post seizure hearings at which the prosecutor must appear and at least by *ex parte* affidavit justify the need for continued retention of the vehicles, no incentive exists for the prosecutors and the **MPD** to focus their energies and make decisions about extracting evidentiary value from vehicles promptly in a way that takes into consideration the owners' interest in retrieving their vehicles and preserving their value.

25.     Any adverse consequences to the government that might possibly have arisen from prompt post seizure hearings were easily avoidable by: [i] requiring that both prosecuting agencies be notified of any prompt post seizure hearings so that the relevant prosecuting agency could obtain retention orders to avert whatever risk of spoliation of evidence might arise from release of vehicles; [ii] allowing prosecuting agencies to block releases of vehicles by obtaining retention orders by *ex parte* affidavits so that criminal defendants could not abuse the hearing to obtain discovery; and [iii] using enforceable waivers from the owner or driver to protect the evidentiary value of a released vehicle. *See e.g.*, Krimstock v. Kelly, 464 F.3d 246, 252 (2d Cir. 2006).

26.     Providing prompt post seizure hearings would have provided a forum before neutral and detached magistrates in which owners could have enforced their right to obtain the return of their vehicles when they were no longer needed as evidence without compromising the government's need for the evidentiary value which can sometimes be extracted from the vehicles using such techniques such as photographing, fingerprinting, or taking DNA swabs.

27.     Therefore, Plaintiffs ask the Court to certify the classes defined below on their own behalf and on behalf of the classes defined below injured (or presently subject to injury) by the policy and practice and custom of the District described herein.

## Jurisdiction and Venue

28.     This Court has jurisdiction over plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C. §1331 and 28 U.S.C. §1343(3)-(4).

29.     Venue is proper in this jurisdiction pursuant to 28 U.S.C §1391(b) because the events or omissions underlying the claims occurred in this judicial District.

## Parties

30.     The MPD seized vehicles belonging to Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson solely for investigation or as possible evidence as opposed to for civil forfeiture determinations.

31.     Takia Jenkins was spending a quiet day at home on 5/27/2012 when several MPD officers from the gun recovery unit showed up at her door and claimed that they had been chasing an unidentified man driving her Mercedes which, as far as she knew, was parked in the parking lot behind her apartment building. The officers demanded to search her home because they believed that the man they had been chasing had run into Ms. Jenkins' home. Ms. Jenkins' consented to a

search of her home but the MPD did not find any driver in the apartment. Neither the US attorney nor the OAG ever instituted a criminal prosecution involving Ms. Jenkins or her Mercedes. Apparently the MPD never conducted any sort of evidentiary analysis on Ms. Jenkins Mercedes. Documents filed by the District in related litigation indicate that the MPD did not even photograph her car. But still, the District did not return the car until 5/9/2013, about a year later, and then only when PDS intervened on Ms. Jenkins' behalf.

32.     The MPD seized Ms. Taylor's Tahoe from her boyfriend, Mr. Vance, to whom she had lent it, on 6/3/2013 and retained it until 8/20/2013 simply because some MPD officers heard a "look out" (broadcast with a description of a suspect) for a shooting suspect on the radio on the night of the seizure and believed, erroneously as it turned out, that Mr. Vance and the Tahoe answered the description broadcast in the lookout. The MPD held the Tahoe for ten weeks even though the shooting victim stated immediately after a "show up" (MPD brought Mr. Vance to the victim for an ID held the day after the seizure) that Mr. Vance was not the shooter, and even though the US Attorney never had an evidentiary "hold" on Ms. Taylor's Tahoe. Documents filed by the District in related litigation indicate that the MPD processed the vehicle for evidence – searched it, photographed it, swabbed it for DNA – in just one day. Ms. Taylor had to keep her Tahoe registered and insured while the MPD retained it and she also had to make the monthly loan payment of $652 each month. Ms. Taylor was able to obtain the return of the Tahoe when she did only because both the District of Columbia Public Defender Service ("PDS"), and the Georgetown Criminal Defense & Prisoner Advocacy Clinic intervened on her behalf.

33.     Lorenzo Johnson lent his car to a friend a couple weeks before Christmas 2013. The friend parked the car on a District street and the MPD seized it off a District street near Georgia Avenue and Quincy Road on 12/12/2013 because Mr. Johnson's ex-girlfriend had told the MPD that Mr. Johnson had given her a ride in the car and that he had refused to let her out. The MPD retained

the car for almost six months even though a few days after telling the police that Mr. Johnson had forcibly detained her in his car the young woman recanted her statements in a sworn written statement and a videotaped statement which was provided to the MPD. The MPD did not even tell the US Attorney that they were holding the car for almost 4 months even though a Sgt. Hunter was telling the family at that time that the an AUSA had a hold on the vehicle. The US Attorney instituted a prosecution against Mr. Johnson on 03/19/2014. 2014 CF2 004708. The only effort the MPD made to process the car was to photograph it. Still the MPD did not release the vehicle until 5/20/2014, almost 6 months after seizing it. Ultimately the US Attorney dismissed the prosecution against Mr. Johnson on 12/03/2014.

34.    Defendant District of Columbia is a municipal corporation capable of being sued under D.C. Code § 1-102.

35.    During all events described herein, all police officers referred to herein, named or unnamed, unless otherwise specified, were police officers or civilian employees of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

## Non-party Actors

## The MPD Property Clerk

36.    The Property Clerk is not a party to this action because the Property Clerk is an employee of the MPD. D.C. Code § 5-119.01(a). The Property Clerk is a member of the MPD but the Property Clerk's staff consists of civilians who are not members of the MPD. D.C. Code § 5-

119.01(a). Vehicles seized solely as possible evidence (but not civil forfeiture) are in the custody of the Property Clerk. D.C. Code § 5-119.06(d).

### The "United States attorney for the District of Columbia or his assistants"

37.     The United States attorney for the District of Columbia is not a defendant in this case. But, the "United States attorney for the District of Columbia or his assistants" (the "US Attorney") prosecutes felony cases and most misdemeanor cases under the D.C. Code pursuant to D.C. Code § 23-101(c).

38.     The US Attorney also prosecutes minor cases under the D.C. Code which are normally prosecuted by the OAG if the minor cases are joined with a felony or misdemeanor and if the OAG consents pursuant to D.C. Code § 23-101(d).

39.     Section 23-101 is part of an "Act of Congress applicable exclusively[2] to the District of Columbia," and thus is "considered to be a statute of the District of Columbia" for purposes of § 1983. 42 U.S.C.A. § 1983.

40.     The D.C. Code is also an "Act of Congress applicable exclusively to the District of Columbia" which the Congress has given the D.C. Council power to amend (subject to Congressional approval). D.C. Code § 1-206.02(c)(2).

41.     There is no statutory basis for the US Attorney to hold vehicles as possible evidence in criminal proceedings conducted under the **D.C. Code** in the Superior Court.

42.     Nonetheless, the District allows the US Attorney unfettered discretion in retaining vehicles seized as possible evidence as long as the US Attorney likes by not providing prompt post seizure

---

[2] D.C. Code § 23-101 derives from an Act to Establish a Code of Law for the District of Columbia, ch. 854, § 932-933, 31 Stat. 1189, 1340-41 (1901). The District of Columbia Court Reform and Criminal Procedure Act of 1970, PL 91-358, 84 Stat. 473, 604-605 (1970), created the current version. D.C. Code § 1-204.35(AG elected).

hearings at which owners can compel the return of their vehicles when they are no longer needed as evidence.

## Superior Court of the District of Columbia

43.     Superior Court judges have concurrent jurisdiction over vehicles and other property held in the custody of the Property Clerk.

44.     Prosecutors' the MPD's authority to seize and detain vehicles and other property as possible evidence in criminal investigations and proceedings in Superior Court derives from the Superior Court judges.

## Office of the Attorney General of the District of Columbia ("OAG")

45.     OAG prosecutes minor offenses and traffic offenses such as DUI under the D.C. Code. D.C. Code § 23-110

46.     There is no statutory basis for the **OAG** to hold vehicles as possible evidence in criminal proceedings conducted under the **D.C. Code** in the Superior Court.

47.     Nonetheless, the District allows the **OAG** unfettered discretion in retaining vehicles seized as possible evidence as long as the **OAG** likes by not providing prompt post seizure hearings at which owners can compel the return of their vehicles when they are no longer needed as evidence.

## Factual Allegations

### Seizures of vehicles in the District by the MPD: An Overview

48.     The MPD and other law enforcement agencies operating in the District of Columbia make warrantless seizures of vehicles for use in investigations, prosecutions, and for forfeiture determinations.

49.     Sometimes MPD and other law enforcement agencies seizes vehicles for more than one reason, for example, MPD officers may place an investigative hold on a vehicle seized in a drug arrest which the Mayor also intends to detain for civil forfeiture and the prosecutor later holds as possible evidence.

50.     Sometimes, as in the cases of Ms. Jenkins, Ms. Taylor, and Mr. Johnson, the MPD seizes vehicles for investigation or as possible evidence but **not** civil forfeiture.

51.     This action covers vehicles seized for investigation or as possible evidence but **not** for civil forfeiture.

### The District's Civil Forfeiture regime and how it affects vehicles seized for evidence

52.     The District of Columbia has a civil forfeiture regime for seizing and forfeiting property such as vehicles which the MPD contends were used in connection with a crime. *See e.g.,* D.C. Code § 48-905.02. There are several statutory provisions pertaining to forfeiture for various offenses but each one employs generally the procedures outlined in D.C. Code § 48-905.02, as amended, which relates, among other things, to seizures of cars, money, and other property involved in offenses involving "controlled substances."

53.     Under the pre-amendment civil forfeiture statute vehicles seized for civil forfeiture were in the custody of the Mayor. D.C. Code § 48-905.02(d)(2). Under the amended version of the statute,

which became effective June 15, 2015, property subject to forfeiture is deemed to be in the custody of "the District." D.C. Code § 41-303(b)(1).

54.     The District's civil forfeiture regime was the exclusive means for determining possession and title to a vehicle seized for a forfeiture determination under the pre-amendment civil forfeiture regime even if the vehicle were also seized for investigation or as possible evidence.

55.     The amended civil forfeiture statute provides that the District shall not release property seized for forfeiture while it is being retained as evidence in a criminal case.

56.     Therefore, Rule 41(g) does not extend to vehicles seized for forfeiture determinations unless and until the Property Clerk determines that a vehicle is not subject to forfeiture.

57.     Even when a vehicle is seized for investigation or as possible evidence instead of for civil forfeiture the District's practices with respect to seizing vehicles for civil forfeiture affect owners of vehicles seized for investigation or as possible evidence (but not civil forfeiture) because owners do not know why their vehicles were seized (for investigation or as possible evidence or for forfeiture determinations) and so owners do not know which retrieval procedures apply.

58.     Moreover, judicial officers in both the District Court and the Superior Court have a practice of not entertaining Rule 41(g) motions for return of a vehicle until they ascertain whether the District intends to institute civil forfeiture proceedings against the vehicle.

59.     It often takes the Property Clerk months to figure out whether a vehicle seized for a forfeiture determination is subject to forfeiture.

60.     Prior to the effective date of the amended civil forfeiture statute owners had no way of challenging the District's seizure of their vehicles for civil forfeiture or the continued retention of their vehicles pending the outcome of the forfeiture determination.

61.     The amended statute provides limited post seizure hearings to owners of cars detained for

civil forfeiture but only after the relevant prosecuting agency has certified that it no longer needs

the vehicle for investigation or as possible evidence.

## Investigative and evidentiary seizures and holds

62.     The MPD and the District's prosecuting agencies seize vehicles for investigation or

evidence and as a matter of course keep the vehicles without a judicial determination of probable

cause or without a judicial determination of need as possible evidence until the government

decides whether to initiate a prosecution or until the related criminal case is over if a prosecution is

initiated without regard to whether the government actually needs to keep the vehicle throughout

the prosecution and without giving any consideration to the owners' interest in retrieving their

vehicles.

## The MPD does not provide notice at the time of seizure

63.     The MPD does not provide any written notice, not even a property receipt (except

sometimes in the case of seizures made pursuant to a warrant the police will provide a copy of the

warrant and an inventory of property taken), telling owners which one of the several possible

grounds it is seizing the property for – investigation, evidence, or forfeiture determinations.

64.     Nor do MPD officers give persons from whom it seizes vehicles for investigation or as

evidence any written notice with contact information such as a working phone number or a

"control or identification number" so people can call the MPD about the status and location of

their vehicles and how to retrieve them.

65.     As a result, owners do not know who has legal custody of their vehicles – the Superior

Court, the Property Clerk, the Mayor, or the District – and thus they cannot tell which retrieval

procedure applies (because different retrieval procedures apply depending on which agency has legal custody of the vehicle).

66.     Since they do not know who has custody of their vehicle they do not even know whether a Rule 41(g) motion is available to them.

67.     Nor do the MPD provide owners with information about retrieval procedures when the District no longer needs their vehicles for investigation or as potential evidence.

68.     MPD general orders require the seizing officer to complete a "PD 81," a police form describing the property and the reason for its seizure (e.g., investigation, civil forfeiture), within 24 hours of the seizure. The PD 81is typically completed and entered into the MPD property tracking database or typed directly into the MPD property tracking database before the seizing officer completes their shift.

69.     However, the MPD do not give a copy of the PD 81 to the owner or driver (if different from the owner) of the seized vehicle until discovery is provided in the criminal case -- if a prosecution is instituted at all.

70.     If a criminal case is not initiated then the owner cannot access the PD 81 until discovery in the civil forfeiture case.

71.     Of course, civil forfeitures are never initiated when vehicles are seized solely for investigation or as possible evidence so effectively the owner never gets to see the PD 81 if a criminal case is not initiated.

72.     If an owner asks the Property Clerk for a copy of the PD 81 the Property Clerk tells the owner to file a FOIA request for the form. A FOIA request, even an uncontested FOIA request, can take months, during which the vehicle remains unavailable for use by the owner and depreciates in value.

73.     The MPD did not give at seizure notice to any of Ms. Jenkins, Ms. Taylor, or Mr. Johnson.

**Vehicles impounded for traffic violations or for unpaid tickets**

74.     By way of contrast, when the District impounds vehicles for traffic violations or for unpaid tickets the District impoundment statute, D.C. Code § 50-2421.07(c), requires the District to send (within five days of receipt of the vehicle at an impoundment lot) notice to owners and lienholders with basic information describing the vehicle, stating the reason the vehicle was impounded, indicating the nature of the traffic violation that caused the impoundment, and where to go or call about the vehicle and how to get the vehicle back.

75.     The District also makes staff available at the DMV for hearings on the validity of the traffic violations connected with the impoundment on a walk-in basis.

## After Property Seized

**At all times after seizure property remains in exclusive possession of Property Clerk**

76.     Property seized for investigation or as possible evidence (but not civil forfeiture) remains in the custody of the MPD Property Clerk until it is released. D.C. Code § 5-119.06.

77.     At all times from the point of seizure until the point of release the Property Clerk had physical and legal custody over the vehicles seized from Ms. Jenkins, Ms. Taylor, and Mr. Johnson.

**It is very difficult and time-consuming for owners to try to locate their vehicles, determine why they were taken, and to figure out how to get them a back using informal methods**

78.     Owners have no effective way to get a vehicle back once the MPD seize it for investigation or as "evidence."

79.     Most owners start with the police district in which the property was seized and then move on to the Property Clerk or one of the prosecuting agencies.

80.     Typically the seizing officer will not provide the owner or driver with a property control number. In a classic catch 22, the Property Clerk will not state whether it has vehicles, or wide, until the owner can provide a property control number.

81.     Police forces in many large cities like the District use this type of system or a similar system of notice.

82.     With respect to vehicles seized for civil forfeiture the Property Clerk will not speak to owners about their vehicles until forfeiture determinations have been made and bonds set (under the pre-amendment forfeiture regime) and notice sent and that can take many months.

83.     Owners cannot monitor their property simply by calling the Property Clerk (sometimes no working phone during the class period) without a property control number

84.     The MPD does not maintain a website of vehicle seized for investigation or as possible evidence so owners cannot monitor the status of their property simply by checking a website.

85.     Claimants must try to monitor their property and learn when the District no longer needs it by calling the Property Clerk over and over or by going to the impoundment lot which is located in a remote corner of the District.

86.     Neither prosecuting agency maintains a publicly available list of vehicles on which they have evidentiary holds or a publicly available central number which owners can call to determine if the prosecuting agency has a hold on their vehicles.

87.     As a result of not receiving notice at seizure, owners must bounce from office to office an agency from agency trying to locate who has seized their vehicles and for what purpose.

88.     Most owners get a big run-around from the Property Clerk when they try to learn who has their property and why.

89.     Besides not providing notice at seizure, seizing officers often provide misleading information, such as telling owners they do not have their vehicles when they in fact do, or that they will never get their property back.

90.     Ms. Jenkins' Mercedes was seized by the MPD from the parking lot behind her apartment building.

91.     One of the seizing officers was Detective Jordan Katz, of NSID, and he gave Ms. Jenkins his business card and explained how the MPD had damaged the rear end of her car and broken the windows during the seizure of the Mercedes.

92.     The police said they were towing her car away for possible evidence and she probably would not get it back or it would cost more than the car was worth to get it back. However, the tow truck never came so the police simply drove her Mercedes away even though they had rammed the rear end of the car during the chase.

93.     Detective Katz refused to take a stolen car report from Ms. Jenkins when she explained she had no idea who had taken the car and detective Katz told her to call "7D," the seventh District police station.

94.     When Ms. Jenkins would call 7D they would repeatedly give her the run around and tell her to call "NSID" without even explaining to her what the acronym meant.

95.     When Ms. Taylor learned the MPD had seized her Tahoe because they said it was used in a shooting she went to the US Attorney's office.

96.     Ms. Taylor went to the US attorney's office because she was slated to testify in another case and she knew people in the US attorney's office.

97.     The US attorney's office told Ms. Taylor that they did not have an evidentiary hold on her Tahoe.

98.    Ms. Taylor got the big run-around when she talked to MPD and it took a week of calling "5D" (the fifth District police station) before a Detective Castle returned her call and told her he had a hold on the Tahoe because of a "shooting. "

99.    But, the police had taken Mr. Vance to the shooting victim's hospital room for a "show up" (on scene identification) the day after the seizure of the Tahoe but the victim did not identify him as the shooter.

100.    Nonetheless, Detective Castle would not give her the case number for which he said the truck was being held because, he said, he did not want her and Mr. Vance "getting our stories together."

101.    CourtView does not show that any case involving a shooting and the Tahoe was ever filed.

102.    The MPD officers who seized Mr. Johnson's vehicle would not tell Mr. Johnson any information about why the vehicle was seized unless Mr. Johnson agreed to go to the officer's District station and give a statement in connection with an incident in which Mr. Johnson was a suspect. Mr. Johnson called "4 D" (the fourth District police station) and spoke to a police officer surnamed Brett or Britt.

103.    The officer said he had Mr. Johnson's Lexis but that he would not release it or talk about why he had it, or even tell Mr. Johnson the property control number unless Mr. Johnson went to the station to see him and to give a statement in connection with the allegations made by the ex-girlfriend.

104.    Mr. Johnson called Blue Plains, the police storage lot, but the Property Clerk would not discuss the vehicle with him since he did not have the property control number for his car.

105.    Instead of going to the station to give the officer a statement Mr. Johnson called PDS.

106.    He did not see his car again for six months.

107.    During that time Mr. Johnson's mother, an investigator, his criminal defense lawyer, and a civil lawyer, all tried to retrieve his Lexus from the MPD but without success for almost 6 months.

108.    About a week after the car was seized Mr. Johnson's mother called the Fourth District and the person who answered the phone told her that Mr. Johnson's car had been seized in connection with an MPD investigation but she was not able to get any more information about the car.

109.    In a classic catch 22 situation, the technician told the mom that she could not track the vehicle without a property control number but the arresting officer would not answer the phone to provide a property control number nor would anybody else the mom was able to reach.

110.    The MPD did not even tell the US Attorney that they had the car for almost 4 months even though they were telling Mr. Johnson's mother and Mr. Johnson's criminal defense lawyer that the US attorney had a hold on the car.

111.    On 2/11/2014 Mr. Johnson's civil lawyer emailed Teresa Howie, Deputy Chief, Superior Court Division of the US Attorney's Office, asking whether the US attorney has a hold on Mr. Johnson's Lexus.

112.    Ms. Howie replied by email on the same day [2/11/2014] and said that she was reaching out to the detective to do find out what was going on with the car, and two days later, on 2/13/2014, Ms. Howie told Mr. Johnson's civil lawyer that that there was no pending US attorney case involving the car and there was no US attorney hold on Mr. Johnson's Lexus.

113.    Meanwhile, Mr. Johnson, his mother, and his investigator also began calling Detective Brett but his voice mailbox was full.

114.    They called the Detective Bureau and the 4th District trying to reach Detective Brett but they were told there was no Detective Brett on the force.

115.    Ultimately Mr. Johnson's mother had to call Assistant Chief Peter Newsham and an officer

in the Central Information Center told her there was no Detective Brett on the force but there was

an Officer Britt in Fourth District.

116.    On 2/28/2014 Ms. Howie said that the MPD had an investigative hold on the Lexus but

that the AUSA did not have a pending case with Mr. Johnson or an evidentiary hold on the Lexus.

117.    But, then, on the same day [2/28/2014], a Sgt Hunter intervened telling Mr. Johnson's

mom that he had a hold on the Lexus and was working with an AUSA and that he would not

authorize release of the Lexus. But, Sgt Hunter would not tell Mr. Johnson's mom the name of the

AUSA.

118.    On 2/28/2014 Mr. Johnson's mother got through to Evidence Control Branch

Commander Willie Dandridge and he told her the property control number for the Lexus.

119.    Commander Dandridge also told Mr. Johnson's mother that he would release the Lexus.

120.    Beginning 3/7/2014 and continuing over the next week Mr. Johnson's investigator kept

calling Sgt. Hunter identifying herself as Mr. Johnson's investigator and leaving messages about Mr.

Johnson's Lexus but Sgt. Hunter never returned the calls.

121.    On 3/19/2014 the US Attorney initiated a prosecution against Mr. Johnson involving his

Lexus and the ex-girlfriend, 2014 CF2 004708.

122.    On 4/11/2014 Ms. Holman replied that she had asked the MPD to photograph the vehicle

but that she had not yet received the photographs and so she had not yet released Mr. Johnson's

Lexus.

123.    Ms. Holman did not provide an expected release date for when the US Attorney would

release Mr. Johnson's Lexus.

124.    Ms. Holman was out of the office from April 14 until April 21 and so the US attorney's

office did not release the car during that period.

125.    On 4/17/2014 the investigator again called the Evidence Control Branch to see whether Mr. Johnson's car was available for pick up but she received no information.

126.    On 4/22/2014 Ms. Holman by email told Mr. Johnson's attorneys that she had received and reviewed the photographs and that she was prepared to sign the release and fax it to the MPD.

127.    On 4/28/2014, Mr. Johnson's civil attorney told Ms. Holman by email that Commander Willie Dandridge, commander of the Evidence Control Branch, said he did not have the release Mr. Johnson's car, and asked Ms. Holman to fax a copy to Cmdr. Dandridge and to counsel.

128.    On 5/2/2014 Ms. Holman informed Mr. Johnson's counsel by email that she had signed the release but before it was faxed to the MPD that MPD detective told Ms. Holman that he needed additional time to photograph the car and so she had delayed sending the release to the MPD Property Clerk until the MPD detective had finished processing Mr. Johnson's car.

129.    The MPD kept it for a couple more weeks so they could photograph it before returning it to Mr. Johnson on 5/20/2014.

130.    Ultimately the US Attorney dismissed the prosecution against Mr. Johnson.

**The police can extract the evidentiary value from a vehicle in just a few days in all but the most extraordinary cases simply by searching, photographing, or conducting scientific analysis such as swabbing for DNA**

131.    There is no evidence to indicate that the MPD ever did any type of evidentiary analysis of Ms. Jenkins' vehicle. In fact, the Evidence Control Branch of the Property Clerk left the vehicle out on the lot with the window broken out so that rain and snow got into the vehicle and mold grew which ruined the value of the vehicle for taking any latent prints and swabbing for any DNA that might have been in the vehicle.

132.    The police can extract the evidentiary value from a vehicle in just a few days in all but the most extraordinary cases simply by searching, photographing, or conducting scientific analysis such as lifting fingerprints or swabbing the surface of the vehicle for DNA.

133.    The search warrant return filed in connection with Ms. Taylor's Tahoe indicates that the MPD was able to process the Tahoe for fingerprints and DNA swabs and conduct an inventory search in just one day.

134.    After keeping Mr. Johnson's Lexus for over four months the only processing the District did of Mr. Johnson's car was to photograph it.

135.    And the government virtually never offers the vehicles into evidence in criminal proceedings such as hearings and trials.

136.    None of the Named Plaintiffs' vehicles was ever offered into evidence in any type of proceeding.

137.    Nonetheless, the police and prosecutors retain such vehicles for months without judicial authorization even when the prosecutor never initiates a criminal case.

138.    When the government does institute a prosecution, the prosecution virtually always keeps the vehicle until at least the end of the criminal case.

**No prompt post seizure hearings as required by the Fifth Amendment**

139.    The District does not give owners prompt post seizure hearings presided over by neutral magistrates in which owners can present their objections to the seizure or the District's continued retention of their vehicles.

140.    Meanwhile, property owners are denied access to the use of their vehicles and vehicle owners must also maintain registration and insurance on the vehicles and keep up car payments.

141.    The lack of a prompt post-seizure hearings thus permits the District to retain private vehicles indefinitely even if the seizing officer's asserted basis for seizure is not supported by probable cause and the District's need for a vehicle for investigation or as possible evidence has evaporated.

142.    One of the major benefits to owners of a prompt post seizure hearing is that it creates a forum in which all interested stakeholders must appear and assert a claim to a seized vehicle if the prosecutor wishes to retain the vehicle as possible evidence. The main practical benefit of the hearings to owners is that they relieve owners of the burden of having to track down every party potentially interested in seized vehicles and negotiate separately with each party.

143.    Litigation in the Second Circuit in the 1990s established that owners from whom the police seized vehicles for investigation or as possible evidence were entitled to prompt post seizure hearings at which the prosecutor had to submit an *ex parte* a statement of why the car was needed as possible evidence in order to prevent the release of the vehicle to the owner.

144.    The basis of the Second Circuit's ruling was its recognition that the prosecutor did not have authority to unilaterally retain property as possible evidence absent a judicial finding of probable cause to support the seizure and a finding of continued need for the vehicle.

145.    Evidence that instituting prompt post seizure hearings has not proved a burdensome requirement on prosecutors or police is the fact that neither the prosecutor nor the NYC police have ever moved during the 20 years in which the order has been in place to amend the District Court's order establishing the prompt post seizure hearings and the procedure for contacting them.

**Rule 41(g) does not provide a prompt, effective remedy for obtaining judicial review of vehicles seized for investigation or as possible evidence when it is available at all. Rule 41(g) not available for months after seizure**

146.    The owner may not bring a Rule 41(g) motion until, at the earliest, at least 20 days after a prosecution has been initiated, if a prosecution involving the vehicle is ever initiated.

147.    If a prosecution has never been initiated then there is no case in which an owner can file a Rule 41(g) motion.

148.    Typically however, if an owner does file a Rule 41(g) motion, the judicial officer will not entertain the motion until after ascertaining whether the District intends to forfeit the property, a process which can take months, or until the end of the criminal case.

149.    It is not clear from the text of Rule 41(g) and the applicable case law whether Superior Court judicial officer can even entertain a Rule 41(g) motion until after the case is terminated, and there are no reported Superior Court or District of Columbia Court of Appeals opinions ordering the Property Clerk or prosecutor to release a vehicle before the end of a criminal prosecution.

150.    Rule 41(g) is not available if a criminal prosecution involving the vehicle is never instituted because the case is "no papered," that is, the prosecution declines to initiate a case.

151.    Moreover, judicial officers in both the District Court and the Superior Court have a practice of not entertaining Rule 41(g) motions until they ascertain whether the District intends to institute civil forfeiture proceedings against the vehicle.

152.    For example, even when a vehicle is seized solely for investigation or as possible evidence instead of for a forfeiture determination, judicial officers do not know why the vehicle is seized, and judicial officers have a practice of not entertaining Rule 41(g) motions until they ascertain whether the District intends to institute civil forfeiture proceedings against the vehicle.

153.    The mere possibility that the District may institute file civil forfeiture proceedings against a vehicle has largely Rule 41(g)'s utility for retrieving vehicles seized as possible evidence.

154.    Courts routinely deny Rule 41(g) motions without prejudice in order to allow the District time to complete the requirements of the forfeiture statute even when the courts do not know

whether the District has instituted civil forfeiture proceedings. *See e.g.,* <u>United States v. Sweet</u>, 2008 U.S. Dist. LEXIS 40831, at *1 (D.D.C. May 23, 2008) (denying a Rule 41(g) motion and ordering the District to file a notice whether civil forfeiture proceedings have been initiated).

155.     Some courts even take the position that all property seized by the MPD, even property seized for investigation or as possible evidence, is in the custody of the Mayor and thus beyond the reach of Rule 41(g). *See* <u>Akintomide v. United States</u>, 2000 U.S. Dist. LEXIS 16626, *2-3 (D.D.C. Oct. 31, 2000).

156.     The Named Plaintiffs' experiences illustrate the difficulties owners face when trying to use Rule 41(g) as a remedy to obtain possession of their vehicles after they have been seized by the MPD and the prosecutor for use as potential evidence.

157.     The US Attorney never initiated a prosecution involving Ms. Jenkins or her car so she never had an opportunity to file a Rule 41(g) motion.

158.     The MPD took Mr. Johnson's Lexus in mid-December 2013 and since the US Attorney did not initiate a prosecution until 3/19/2014 the earliest he could have even filed a Rule 41(g) motion was about 4/10/2014, or almost 4 months after the date of seizure.

159.     The US Attorney never initiated a prosecution involving Ms. Taylor's Tahoe so she never had an opportunity to file a Rule 41(g) motion.

160.     The OAG did initiate a prosecution against Mr. Vance on 6/13/2013 (10 days after the seizure) for driving the Tahoe without a permit.

161.     On 7/25/2013, after investigating which agency had Ms. Taylor's Tahoe and after trying unsuccessfully to negotiate the return of Ms. Taylor's Tahoe, Mr. Vance (the driver from whom the MPD seized the Tahoe) did file a Rule 41(g) motion in his no-permit case in Superior Court but the OAG stated it did not have a hold on the Tahoe.

162.    On 8/13/2013 OAG criminal branch, the agency prosecuting Mr. Vance's case, filed a

motion for an extension to respond to the Rule 41(g) motion, and the following day OAG criminal

filed a second motion for an extension.

163.    OAG criminal's response, filed almost two months after the MPD seized the Tahoe,

ultimately stated that OAG did not have an evidentiary hold on the Tahoe.

164.    The Superior Court judicial officer dismissed the motion as moot on 8/19/2013 after OAG

criminal stated in its response to the Rule 41(g) motion that it did not have an interest in retaining

Ms. Taylor's Tahoe.

165.    The US attorney had previously stated to Ms. Taylor that it did not have an evidentiary

hold on her Tahoe and so the Tahoe was released by the Property Clerk.

166.    Because her car was not used in the offense for which the US attorney prosecuted the

driver she would not have been able to bring the motion anyway.


**The Property Clerk may not release property held for investigation or evidence without a**

**certificate of release executed by the relevant prosecuting agency pursuant to the Property Clerk**

**statute and District of Columbia municipal regulations**


167.    The Property Clerk may not release property held as possible evidence without a certificate

of release from the US attorney pursuant to the Property Clerk statute. D.C. Code § 5-119.06(d).

168.    This provision of the Property Clerk statute, D.C. Code § 5- 119.06(d), is an Act of

Congress applicable solely to the District of Columbia. It was added May 9, 1941, by 55 Stat. 185,

ch. 99, § 1 and it is the only provision in that Act. Therefore, the Property Clerk statute is

"considered to be a statute of the District of Columbia" for purposes of § 1983. 42 USCA § 1983.

169.    Moreover, the District has adopted the obligation imposed on it by D.C. Code § 5-

119.06(d) by a municipal regulation promulgated by the Mayor. *See* 6A DCMR § 807.3.

170.     Similarly, the Property Clerk may not release property held for investigation or evidence in connection with an offense prosecuted by the OAG without a certificate of release from the OAG pursuant to a regulation promulgated by the Mayor. *See* 6A DCMR § 807.3.

171.     Prosecutors from both agencies use the PD 81(c) as a certificate of release under D.C. Code § 5-119.06(d) and 6A DCMR § 807.3.

172.     The PD 81 form is the MPD form which the MPD uses to memorialize the seizure, retention, and release of property coming into the custody of the Property Clerk.

173.     The mere fact that the Property Clerk obtains a release certificate (PD 81(c)) from a prosecutor before the Property Clerk releases the vehicle does not by itself mean that the US attorney or the OAG was liable for delay in releasing the vehicle past the point when it was needed for investigation or as possible evidence.

174.     The PD 81(c) does not signify that the prosecuting agency actually held the vehicle as possible evidence or for how long. D.C. Code § 5-119.06(d).

175.     A PD 81(c) executed by the prosecuting agency merely signifies that the prosecuting agency did not object to the release of the vehicle by the Property Clerk as of the date of the certificate.

176.     The text on section (c) of the PD 81 reads "There is no objection on the part of this Office to disposition of the property by the Property Clerk in accordance with the District of Columbia Code."

177.     MPD general orders require papering officers to obtain a certificate of release from the prosecuting agency when a case is no papered at the time of papering.

178.     MPD general orders also require MPD officers to obtain a release from the prosecuting agency when the case is over.

179.     Frequently the MPD will retain a vehicle for months before seeking a release from the prosecutor and will also retain a car for weeks after a release from the prosecutor.

180.    Neither the Property Clerk statute nor the regulation promulgated by the Mayor applying it to cases prosecuted by the OAG provide an exemption when seizures "would cause particular hardship."

181.    Nor does the statute or the regulation provide for prompt post seizure hearings.

182.    To the extent that D.C. Code § 5-119.06(d) and 6A DCMR § 807.3 authorize the Property Clerk and the prosecuting agencies to seize and detain vehicles for up to a year after the date of seizure without the need for a judicial determination of probable cause and without requiring the MPD or the prosecuting agencies to establish need and without providing for prompt post seizure hearings the Property Clerk statute and the DCM are regulations are facially invalid under the Fifth Amendment.

### Seizing and retaining the family car places an extreme hardship on the owner and family members

183.    Seizing and retaining someone's vehicle places an extreme hardship on the owner and family members.

184.    While the MPD retained the car, Ms. Jenkins' had to keep the car titled and registered and insured.

185.    The MPD were so contemptuous of Ms. Jenkins' property rights that even though they were the ones that broke out the rear window they didn't put a cover on it and so rain and snow got inside the vehicle and ruined it and also ruined the possibility of extracting any evidentiary value from the vehicle.

186.    When MPD finally gave the car back on 5/9/2013, it was all molded on the inside because the left the window (which they had broken out) was uncovered while they had custody of the Mercedes.

187.    Ms. Jenkins' had to tow her car home because it would not start and the car sustained about $500 in damage to the windows and as yet undetermined amount of damage to the rest of the car.

188.    When the MPD had Ms. Jenkins' car she had to take metro or taxis or buses and got rides from friends and Ms. Jenkins had to pay someone to take her daughter from home in Southeast to school in Northeast. She had to pay for rides or metro for her daughter to get around.

189.    While the MPD had her car Ms. Jenkins had to make arrangements to find other ways to get to work, run errands, see family and friends, and get to the other places she had to go.

190.    The loss of her car presented a severe hardship; Ms. Jenkins relied on cabs public transportation and friends for transportation.

191.    Ms. Jenkins got pregnant in October 2012 and by the end of December it was very hard for her to get around because of the pregnancy. Ms. Jenkins was still pregnant when she finally got the car back in May 2013.

192.    Ms. Jenkins told the police she was pregnant and she needed the car back but the police did not care.

193.    Ms. Taylor lives in Lawrence, Maryland and she works a ten dollar cab ride away from her home. Ms. Taylor had to take cabs from home to work while MPD held her Tahoe.

194.    Her children could not go to summer camp and other summer activities because she did not have my vehicle to take them.

195.    Ms. Taylor really needed the Tahoe to fulfill her responsibilities in life. Being without the car seriously interfered with her ability to obtain critical life necessities, such as earning a livelihood, going to interviews, receiving necessary medical care, shopping for necessities such as food and clothing, and visiting family and friends, helping to care for her family, and getting to places.

196.    Ms. Taylor had to keep her Tahoe registered and insured while the MPD retained it and she also had to make the monthly loan payment of $652.

197.    Mr. Johnson also needed his car for the everyday necessities of life such as visiting his family and friends.

## Substantive Allegations

## Claim One

## Fifth Amendment Procedural Due Process Claim for failure to provide notice at seizure

198.    Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson as Named Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

199.    The District seized Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson's and the other class members' vehicles as potential evidence and held them for months and years after they were needed as potential evidence or never gave them back

200.     The District never gave them individualized notice at the time of seizure of seizure of the vehicles with information about which agency was seizing their vehicles (Mayor for civil forfeiture or Property Clerk as evidence; US Attorney or OAG) which agency had legal custody of their vehicles (Mayor or Property Clerk) and for which purpose (as potential evidence or for civil forfeiture), and which retrieval procedures applied, and what those retrieval procedures were.

201.    This claim for notice is separate and independent from the claim for notice derived from the claim for prompt post seizure hearings.

202.    This pattern and policy of the District violated their procedural due process rights under the Fifth Amendment to the United States Constitution.

203.    Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson and the other class members were injured thereby and suffered damages.

### Claim Two

### Fifth Amendment Procedural Due Process Claim for failure to provide prompt post seizure hearings and notice of the hearings

204.    Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson as Named Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

205.    The District seized Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson's and the other class members' vehicles as potential evidence and held them for months and years or never gave them back even when they were no longer needed as potential evidence because they had no evidentiary value or because the District through its prosecutors and police force had retrieved all the evidentiary valuable in the vehicles.

206.    The District never gave them prompt post seizure hearings at which they could challenge the seizure or the retention of their vehicles in violation of their procedural due process rights under the Fifth Amendment to the United States Constitution.

207.    Nor did the District ever give them notice of such prompt post seizure hearings in violation of their procedural due process rights under the Fifth Amendment to the United States Constitution.

208.    It is the pattern, policy, and practice of the District to seize and to retain indefinitely property and in some cases to keep such vehicles without providing prompt post-seizure hearings

at which owners can challenge the District's seizure and continued retention of their vehicles and without notice of the required hearings.

209.    The District Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson's and the other class members were injured thereby and suffered damages.

## Claim Three

## Fifth Amendment Procedural Due Process Claim for failure to return vehicles when no longer needed for investigation or as possible evidence and hearings and notice of the hearings

210.    Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson as Named Plaintiffs re-allege all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

211.    The District seized Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson's and the other class members' vehicles as potential evidence and held them for months and years or never gave them back even when they were no longer needed as potential evidence because they had no evidentiary value or because the District through its prosecutors had retrieved all the evidentiary valuable in the vehicles.

212.    The District never gave them prompt post seizure hearings at which they could challenge the seizure or the retention of their vehicles in violation of their procedural due process rights under the Fifth Amendment to the United States Constitution.

213.    It is the pattern, policy, and practice of the District to seize and retain indefinitely property and in some cases keep such vehicles without providing prompt post-seizure hearings at which owners can challenge the District's seizure and continued retention of their vehicles and without notice of the required hearings.

214.    The Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson and the other class members were injured thereby and suffered damages.

## Class Action Allegations

## Class Allegations for Each Class

215.    Named Plaintiffs ask the Court to certify under Rules 23(a) and 23(b)(2) and (b) (3) the three separate classes defined below on their own behalf and on behalf of the classes defined below injured (or presently subject to injury) by the policy and practice and custom of the District described herein.

### Claim One: no notice at seizure

216.    Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person (a) from whom the District seized property during the period from October 28, 2009 to the termination of this action (b) without giving him or her at the time of seizure individualized written notice of seizure of property, an inventory of the property, and individualized notice of procedures for the return of the property.

### Claim Two: no prompt post seizure hearings

217.    Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person (1) whose property from October 28, 2009 until the termination of this case has been, or will be, (2) **seized by** the District of Columbia; **and (3) given into the custody of the MPD**

**Property Clerk** and to (4) to whom the District did not provide a prompt post-seizure hearing before a neutral arbiter at which such person could test the validity of the seizure and the validity of the continued or continuing government retention of the property pending any forfeiture determination or investigative or evidentiary holds or for any other reason.

## Claim three: right to return

218.    Takia Jenkins, Muslimah Taylor, and Lorenzo Johnson bring this action under Rules 23(a) and 23(b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person (1) from whom the District seized property during the period from October 28, 2009 to the termination of this action, and (2) failed to return it to him or her (3) without giving him or her individualized notice (4) when the District had determined that the property was not subject to forfeiture or the District otherwise no longer needed the property.

## Class Allegations Applicable To All Classes

219.    Certification of a class under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because defendant had a policy and engaged in a pattern and practice of conduct that has uniformly affected all members of the class and declaratory relief against Defendant will benefit each and every plaintiff and class member.

220.    The classes are entitled to declaratory relief.

221.    Certification of classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and a class action is superior for the fair and efficient adjudication of this controversy as detailed below.

222.    Regarding the Named Plaintiffs, and members of the classes, there are no individual questions on the issue of liability.

223.    Each class is so numerous that joinder of all members is impracticable. The exact number

of class members is unknown to plaintiffs at this time, but, based on MPD disclosures, documents,

and representations to this Court in other cases, is likely to consist of at least over 600 people for

each class.

224.    The Named Plaintiffs' claims are typical of the claims of the other members of the class,

because the Named Plaintiffs and all other members of each class to which they belong were

injured by exactly the same means, that is, by the failure to provide adequate notice or hearings.

225.    The Named Plaintiffs will fairly and adequately protect the interests of the members of

each class to which they belong and have retained counsel who are competent and experienced in

complex federal civil rights class action litigation and/or complex federal prisoner rights litigation.

226.    The Named Plaintiffs have no interests that are contrary to or in conflict with those of each

class to which they belong.

227.    The Named Plaintiffs know of no difficulty that will be encountered in the management of

this litigation that would preclude its maintenance as a class action, and the class action is superior

to any other available means to resolve the issues raised on behalf of the Classes. The class action

will be manageable because so many different records systems exist from which to ascertain the

members of the putative class.

228.    Defendant District of Columbia has within its computerized records (such as CJIS and

LEADS, the MPD's booking databases; and Evidence on Cue, the database in place at property

division since 2009) and paper records the names and addresses of all the current and past class

members.

229.    Class treatment will be superior because liability can be determined for each Named

plaintiff and each class member on a class wide basis either as a matter of law or by using data from

the PD 163 and the PD 81 as entered into the District's computerized databases.

230.    Actual damages can also be determined on a class wide basis through use of expert testimony and the District's own valuations of similar vehicles.

231.    General damages can be ascertained on a class-wide basis,

## RELIEF DEMANDED

Each Named Plaintiff respectfully requests that this Court grant them and the classes they represent the following relief:

**A.**    Enter a judgment in favor of plaintiffs and the class described herein;

**B.**    Enter such other declaratory judgments as this Court deems just and proper.

**C.**    Enter such judgments for injunctive relief as this Court deems just and proper.

**D.**    Enter a declaratory judgment declaring the District's implementation of its policies for seizing vehicles is potential evidence is unconstitutional because the District did not provide prompt post seizure hearings at which owners could challenge the validity of the seizure and retention of their money cars.

**E.**    Enter a judgment awarding the Named Plaintiffs and class members damages including the amounts the value of the loss of the use of their cars and the loss of the car and upkeep of the car during seizure, and other damages including prejudgment interest, and compensatory damages for any injury attributable to loss of their property and loss of their property's use and damages for the value of their time devoted to its retrieval and other damages, and attorney fees; as well as equitable and declaratory relief.

**F.**    Enter a judgment awarding plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

**G.**    Grant such other relief as this Court deems just and proper.

Respectfully submitted,


/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Named Plaintiffs

2020 Pennsylvania Ave, NW
#395
Washington, DC 20006
Phone 202/824-0700
Email clairbornelaw@gmail.com

Respectfully submitted,


/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq.
D.C. Bar # 221598

Counsel for Named Plaintiffs

P.O. Box 1547
Dubois, WY 82513
307-431-4158 (cell)
Email lcunningham@law.gwu.edu

Admitted in New York, Washington, D.C.
and Wyoming.

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.


/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiffs and the Classes